### FLORA v. ANDERSON et al.

#### (Circuit Court, S. D. Ohio, W. D. April 6, 1895.)

#### No. 4,770.

1. WILLS—CONSTRUCTION—POSSIBILITY OF ISSUE.
    One L. devised a part of his estate in trust for his daughter E., for life, with remainder to the issue of her body surviving her. At the time the will was made E. was nearly 50 years of age, and had no legitimate issue. After E.'s death, one F., alleged to be an illegitimate child of E., claimed the remainder. *Held*, that it was conclusively presumed to be possible that E. might have issue at any time during her life, and it was not competent to prove that she was past the age of child-bearing. when L.'s will was made, for the purpose of showing that L. must have had in view an illegitimate child in creating the remainder to E.'s issue.

2. SAME—MEANING OF "ISSUE."
    *Held*, further, that the devise to "issue" meant prima facie legitimate issue, and an intention to include illegitimate issue must be deduced from the language of the will itself, without resort to extrinsic evidence.

This was a suit by John W. Flora against John L. Stettinius, trustee under the will of Nicholas Longworth, Sr., and Larz Anderson and others, devisees of Joseph Longworth, for an accounting. The defendants excepted to a part of the bill for scandal and impertinency.

John W. Menzies, E. W. Hawkins, L. H. Swormstedt, and Foraker & Prior, for plaintiff.
William Worthington and Thomas McDougall, contra.

SAGE, District Judge. Nicholas. Longworth, Sr., by his last will and by codicil devised two-twelfths of his estate in trust for the benefit of his daughter, Eliza L. Flagg, during her life, with remainder to the issue of her body surviving her; and, in default of such issue, to Joseph Longworth and John L. Stettinius. Eliza L. Flagg was married in 1850, in her forty-first year. At the date of the will she was 48 years and 3 months old; at the date of the codicil, 51 years and 1 month. The disposing language in the will with reference to the estates in remainder is not altered by the codicil, excepting as to the shares taken by the remainder-men in default of issue. The testator died on or about the 17th of February,

1863. The will was executed on the 25th of March, 1859, and the codicil on the 15th of January, 1862. Eliza L. Flagg died in 1891, not having had issue after her marriage. Her husband survived her. The plaintiff, claiming that he is the child of Eliza L. Flagg, born out of wedlock, before her marriage, and entitled to the above estate in remainder as "issue of her body surviving her," has brought this suit against John L. Stettinius, the trustee under the will, and the devisees of Joseph Longworth, seeking an accounting, etc. The case is now before the court upon an exception filed by Larz Anderson, executor and trustee under the will of Longworth, and by other defendants. The exception is for scandal and impertinency, and is directed against the part of the bill found in paragraph No. 6, and referring to Eliza L. Flagg, reading as follows: "And it was also well known to the said Nicholas Longworth, Sr., at the time of making said will and codicil, that she was past the age of child-bearing, and that she never could thereafter have issue of her body." In support of the exception the point is made that in matters relating to the character and devolution of estates there is a conclusive presumption of law that there is no limitation during life to the possibility of issue, and that the question whether a particular person was in fact incapable of having issue when an instrument was made or took effect is not open to investigation. The reasons stated by counsel for the proposition are: First, that light upon the subject can be obtained only by investigations of the most private and delicate character, and of a kind which can be tolerated in a court of justice only under stress of overwhelming necessity; second, that such light as could be so obtained would be uncertain and unreliable; that the argument of the complainant, indicated by the passage in the bill excepted to, will be that it must be predicated of all women that at a certain age, to wit, before they have completed their 50th year (for Mrs. Flagg was not 50 years of age when this will was made), they have ceased to have capacity to bear children. That this proposition is untrue is supported by the following citations: 2 Tayl. Med. Jur. (3d Ed.) pp. 294-300, c. 73; Whart. & S. Med. Jur. §§ 199, 200; Beck, Med. Jur. (12th Ed.) pp. 294-299, 668-672. In support of the proposition that the presumption of law is conclusive, reference is made to the following citations: Section 34 of Littleton on Tenures, where, treating of an estate tail after possibility of issue extinct, it is said (Co. Litt. 28b; 1 Thom. Co. Litt. 550):

"And note that no one can be tenant in tail after possibility of issue extinct but one of the donees, or the donee in special tail. For the donee in general tail cannot be said to be tenant in tail after possibility of issue extinct, because always during life he may by possibility have issue which may inherit by force of the same in tail."

Commenting upon the preceding section, relating to the same subject, Lord Coke says (Co. Litt. 28a; 1 Thom. Co. Litt. 551):

"But if a man giveth land to a man and his wife, and to the heirs of their bodies, and they live until each of them be an hundred years old, and have no issue, yet do they continue tenant in tail, for that the law seeth no impossibility of having children."

So, also, Littleton, in section 36 (Co. Litt. 30b; 1 Thom. Co. Litt. 569), says, concerning the right of dower, which the wife could have only in those lands of her husband which could be inherited by her issue, if any, born of him, that this right exists where a man seised in fee simple of fee tail general or as heir in special tail marries, and his wife survives him, "whether she has issue by her husband or no, and of what age soever the wife be, so as she be past the age of nine years at the time of the death of her husband." See, also, Litt. Ten. § 53, and Co. Litt. 40a; 1 Thom. Co. Litt. 579,— where it is said:

"Albeit the wife be an hundred years old, or that the husband at his death was but four or seven years old, so that she had no possibility to have issue by him, yet, seeing the law sayeth that if the wife be above the age of nine years at the death of her husband she shall be endowed, and that women in ancient times have had children at that time, whereunto no woman doth now attain, the law cannot judge that impossible which by nature was possible. And in my time a woman above three score years old hath had a child, and 'ideo non definitur in jure.' And for the husband's being of such tender years he hath habitum, though he hath not potentiam at that time; and therefore his wife shall be endowed."

In Jee v. Audley, 1 Cox, Ch. 324, the testator bequeathed £1,000, to be invested, and the income paid to his wife for life, and at her death the principal to be paid to Mary Hall and the issue of her body, begotten and to be begotten, and in default of such issue to the daughters then living of John Jee and his wife, Elizabeth. The testator survived his wife. At his death John Jee and his wife were each over 70 years of age, and Mary Hall was over 40 years of age and unmarried. It was contended under these circumstances that the testator must have contemplated the daughters then living of John Jee and his wife, and therefore the bequest was good. But Lord Kenyon, M. R., held that the bequest could not be sustained, unless the law could conclusively presume that no more daughters could be born to the Jees; that no such presumption could be made; and that the bequest was therefore void. Vice Chancellor Malins, in Re Sayer's Trusts, L. R. 6 Eq. 319, where the same question arose, refused to receive evidence as to the age of the woman as bearing upon the possibility of her becoming the mother of a child. To the same effect was the ruling made by Chitty, J., in 1888, in Re Dawson, 39 Ch. Div. 155. List v. Rodney, 83 Pa. St. 483, was a suit to enforce specific performance of a contract for the sale of real estate, where the title was good except for the possibility that a woman over 80 years of age might have children. The court refused to force the title upon the purchaser. In Macomb v. Miller, 9 Paige, 265, under similar facts, specific performance was decreed, but only because the parties to the suit had stipulated upon the record, as matter of fact, that the woman could not by possibility have other children. This case was affirmed in 26 Wend. 229, where, on page 234, is to be found a note giving an account of sundry cases of births late in life. See, also, Lawson on Presumptive Evidence (sections 302, 303), where it is stated that no case can be found in America wherein a court has presumed a woman to be past the age of child-bearing. See, also, 1 Jarm. Wills, *292 et seq.; 2 Jarm. Wills, *223.

Counsel in argument state another consideration to show how impossible the law should be otherwise. Suppose it be established by evidence that a testator, who has used language like that here in question, believed when he made his will that the life tenant never could have issue. Suppose, also, that the testator was wrong in his belief, and that the life tenant afterwards did have issue. What meaning then is to be given to the will? If the belief of the testator can be ascertained by such inquiry outside of the will, and is to control, the words of the will would be given an effect exactly contrary to their natural and only ostensible meaning on the face of the will. Again, wills take effect only upon the death of the testator. Suppose, when a testator makes his will, he believes that the life tenant may have issue, but that afterwards this belief was reversed, and continued to be reversed until his death, and these facts were proven, what construction should the will receive? Or suppose these conditions reversed, what would be the effect? What security could there be in dealing with titles if estates apparently given by the words of the will could be divested or diverted by extraneous proof of a contrary intention on the part of the testator?

The next proposition is that the intent to include illegitimate children in a gift to "issue" generally must be gathered from the will itself. In Cartwright v. Vawdry, 5 Ves. 530, it was held that it is impossible in a court of justice to hold that an illegitimate child can take equally with lawful children upon a devise to children. This case was followed in Wilkinson v. Adam, 1 Ves. & B. 422, where the court said:

"The rule cannot be stated too broadly that the description 'child,' 'son,' 'issue,' every word of that species, must be taken prima facie to mean legitimate child, son, issue."

In that case, Lord Eldon, who prepared the opinion, further said:

"In all the cases that I have seen, having relation to this question, the illegitimate children that were to take must have taken, not by any demonstration arising out of the will itself, but by the effect of evidence dehors, read or attempted to be read with a view to establish, not out of the contents of the will, but by something extrinsic, who were intended to be the devisees; and if my judgment upon this case is supposed to rest upon any evidence out of the will, except that which establishes that there were individuals who had gained by reputation the name and character of his children, that conclusion is drawn without sufficient attention to the grounds on which the judgment is formed; my opinion being that, taking the fact as established that there were children who had gained the reputation of being his children, it does not necessarily appear in the will itself that he intended these children. We may conjecture that he meant illegitimate children if he did not marry, yet, notwithstanding that may be conjectured, the opinion of the court was, as mine is, that where an unmarried man, describing an unmarried woman as being dearly beloved by him, does no more than make a provision for her and her children, he must be considered as intending legitimate children, as there is not enough upon the will itself to show that he meant illegitimate children; and my opinion is that such intention must appear by necessary implication upon the will itself. With regard to that expression, 'necessary implication,' I will repeat what I have before stated, * * * that in construing a will conjecture must not be taken for implication; but necessary implication means, not natural necessity, but so strong a probability of intention that an intention

contrary to that which is imputed to the testator cannot be supposed. * * *
The description of a son, child, etc., means prima facie legitimate son, etc.;
and all the cases from the passage in Lord Coke, establishing that a bastard
may take by purchase, if sufficiently described, amount to no more than
that he must make that out upon the will itself."

To the same effect, see Shearman v. Angel, Bailey, Eq. 351; War-
ner v. Warner, 15 Jur. 141; Harris v. Lloyd, Turn. & R. 310.

In Harris v. Lloyd, Lord Eldon said that illegitimate children
were entitled under the description of "children" in the will, the
intention not being sufficiently apparent upon the face of the will;
and added:

"I have not the least doubt that the testator meant illegitimate children,
but I am clearly of the opinion that there is not enough upon the face of
this will to authorize me to carry that intention into effect."

See, also, Bagley v. Mollard, 1 Russ. & M. 581; Brower v. Bowers,
1 Abb. Dec. 226.

The question has been directly decided in the same way by the
supreme court of Ohio in the case of Gibson v. McNeely, 11 Ohio
St. 131. There the testator devised property to the issue of Nancy
Wilson, his niece. At the date of the will (1844) she was a woman
of advanced age, unmarried, and had living an illegitimate daughter,
28 years of age, who was reputed her child. The court held that
that child could not take under the term "issue." Judge Scott, who
announced the opinion, said:

"It is clear that, according to the rule of the common law, a gift to chil-
dren, sons, daughters, or issue, imports prima facie legitimate children or
issue, excluding those who are illegitimate; and that, 'in order to let in the
illegitimate children under a gift to children, it must be clear, upon the
terms of the will, or according to the state of facts at the making of it, that
legitimate children never could have taken.' 2 Jarm. Wills, 140; Cartwright
v. Vawdry, 5 Ves. 530. There is nothing apparent on the face of the will,
in this case, or in the facts existing at the time it was made, to rebut this
prima facie presumption of law. The mother of Mrs. Gibson was then in
full life, and the testator might well have contemplated her subsequent
marriage."

The court held, as the result of the application of the doctrines
stated in the opinion in the case, that Mary Ann Gibson, being the
illegitimate daughter of Nancy Wilson, took nothing under the will
as the "issue" of her mother, and that under the Ohio statute of
descent then in force she could not inherit from her mother's brother,
nor from his daughter.

Counsel appeal to the expression in the opinion that there was
nothing apparent on the face of the will, nor in the facts existing
when it was made, to rebut the prima facie presumption of law, as
warranting the inquiry they would base upon the passage in Long-
worth's will, to which the defendants except. There are two an-
swers to this proposition, each conclusive. First. The authorita-
tive statement of the decision is, under the rule of the supreme
court of Ohio, to be found in the syllabus,—which is critically ex-
amined and formally passed upon by the court,—while the judge
who prepares the opinion is alone responsible for what it contains;
and the syllabus states clearly and without qualification the point

decided to be that the illegitimate daughter could not inherit under the will as the "issue" of her mother, nor could she inherit collaterally from her mother's niece. Second. The construction of words used in a will cannot be varied by evidence of actual intention. 1 Jarm. Wills, 726, and citations. The state of facts—that is, the circumstances—existing at the date of the will is proper to be regarded, and evidence as to the condition of the testator's property, family, etc., is admissible, but only to explain a latent ambiguity. Id. 733, 734, and cases cited. In this case there is not the slightest ambiguity; the true interpretation of the words of the will, and the rule as to its application, having, when the will was executed, been explicitly and authoritatively laid down in Gibson v. McNeely. There is, therefore, neither occasion nor room for explanation by parol evidence, or for the introduction of existing circumstances to aid in construction. Gibson v. McNeely was followed by the supreme court in Hawkins v. Jones, 19 Ohio St. 22, where the court said that the construction of the statute in Gibson v. McNeely had been acted upon as a rule of real property in Ohio for over 30 years; and, whatever might be the views of the court as to the correctness of the holding were the question presented as an original one, it did not at that late day feel at liberty to disturb it. This is referred to by counsel for the complainant as an intimation that the court would have decided otherwise if the question had then been presented for the first time. However that may be, it is much more important in this case, for the reason that the declaration by the supreme court that the decision in Gibson v. McNeely had, in 1869, when Hawkins v. Jones was decided, been recognized over 30 years as a rule of real property, makes it necessary for this court to follow it, because under section 721, Rev. St. U. S., where the construction of a will by the supreme court of a state has been so long acquiesced in as to become a rule of property, it is a rule of decision for the courts of the United States. Lane v. Vick, 3 How. 464; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10. In Pleasant Tp. v. Aetna Life Ins. Co., 138 U. S. 67, 11 Sup. Ct. 215, the supreme court affirmed Burgess v. Seligman, and again recognized the proposition that rules of property established by the decision of the supreme court of a state are always to be followed by federal courts.

Attention is also called by counsel for the complainant to the fact that the legislature of Ohio appears to have been dissatisfied with the construction given to the statute in Gibson v. McNeely, and as a result passed the act of April 3, 1867 (64 Ohio Laws, 105), which enacts that "bastards shall be capable of inheriting from and to the mother, and from and to those from whom she may inherit, or to whom she may transmit inheritance in like manner as if born in lawful wedlock." But that statute was passed four years after the death of Longworth, and after all rights under his will had vested. Particular attention is called by counsel for the complainant to the case of Bennett v. Toler, 15 Grat. 583, decided by the supreme court of Virginia in the same year that Gibson v. McNeely was decided by the supreme court of Ohio. In that case

the law was held to be as claimed for the defendant, but that ruling was made expressly upon the statute of Virginia, and therefore is not to be regarded as applicable in this case.

Attention is called to the difference between the provision made by the will for Eliza Flagg and the provisions for the other children. Her estate was put in trust. As to the other children the estate was to go to their children or heirs; as to her, to the "issue of her body." It is pointed out that this phrase, "issue of her body," is used in every instance, both in the will and in the codicil, when the testator refers to her, and not in any instance where the reference is to any of his other children. This proposition, analyzed, implies that the testator intended to make provision under cover of that phrase for the illegitimate issue of the body of Eliza Flagg, preferring not to disclose the fact publicly. Now, if there were any such illegitimate issue, and such intention on the part of the testator, this is to be said: Mr. Longworth was a lawyer. If surrounding and existing facts and circumstances, including those above referred to, could be taken into account, is it not strange, if not incredible, that he did not make the provision that, if there was no issue of the marriage of Eliza J. Flagg, her share of his estate at her death should go to the complainant, naming him, thereby avoiding scandal, and stating his intent beyond a peradventure or doubt? Such a provision might have caused comment, but it could not have suggested the fact which he wished to conceal. As to the difference in the language applied by the testator to her interest and to that of the interests of his other children, it may further be said that she alone was childless. But, independently of any of these or the like considerations, the rule of the supreme court laid down in Gibson v. McNeely, that a gift to issue, or to issue of the body, generally, in a will, is limited to legitimate issue, is decisive and controlling.

Lastly, it is urged that the testator expressly provided in his will that its language should be taken in its ordinary sense or meaning, which was equivalent to directing that technical rules should be disregarded. In answer to this, the second proposition of Vice Chancellor Wigram (Wig. Ev. p. 55) is quite sufficient. It is as follows:

"Where there is nothing in the context of a will from which it is apparent that a testator has used the words in which he has expressed himself in any other than their strict and primary sense, and where his words, so interpreted, are sensible with reference to extrinsic circumstances, it is an inflexible rule of construction that the words of the will shall be interpreted in their strict and primary sense, and in no other, although they may be capable of some popular or secondary interpretation, and although the most conclusive evidence of intention to use them in such popular or secondary sense be tendered."

Counsel appeal to the provision that the language of the will should be taken in its ordinary sense or meaning, not in support of the construction which is according to the ordinary meaning, but in support of a construction which gives to the language a meaning not only extraordinary, but contrary to the express rulings of the highest judicial tribunal of the state. It is to be noticed in

this connection that the testator did not provide that the language should be taken in its popular sense or meaning, but in its ordinary sense or meaning; that is to say, in the sense in which it was generally used.   There is another reason for limiting the inquiry as to the meaning of the testator to the language of the will.   The only method by which the owner of property can make disposition of it to take effect after his death is by will, which must be made in writing, and executed according to the requirements of the statute.   It is not possible, therefore, to import into a will any intent manifested otherwise than in the manner required by law to effectuate a testamentary disposition.   The exception will be sustained.

Counsel for complainant called attention to the fact that two of the defendants (Susan W. Longworth and John L. Stettinius) have answered denying the averment to which the exception was taken, as well as the averment that the complainant is the child of Eliza J. Flagg, and claimed that as to them the exception could not be sustained, no matter what the court might see fit to do as to the excepting defendants.   In support of this proposition they cited 1 Fost. Fed. Prac. § 68, and Story, Eq. Pl. 270.   The court said that it was true that exceptions must be taken before answer. The defendants who have answered have not joined in the exceptions; but the exceptions having been taken by defendants who have not answered, and having been sustained, the averment excepted to goes out of the bill, and cannot be relied on against any of the defendants. The rule referred to is a rule of practice, but it is not to be so applied as to retain in the bill, for any purpose, averments which the court has held, upon proper exceptions, to be scandalous and impertinent.